HICKS, ALIEN PROPERTY CUSTODIAN, et al. *v.*
GUINNESS et al.

GUINNESS et al. *v.* HICKS, ALIEN PROPERTY
CUSTODIAN, et al.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

Nos. 80 and 81.  Argued October 22, 23, 1925.—Decided November
16, 1925.

1. In an action under the Trading with the Enemy Act to recover on
the debt of a German to an American citizen, which was due and
payable here in German marks before this country entered the late
war, the damages are to be measured by the value of marks in
dollars as of the time when default occurred.  P. 80.
2. The liability to damages having become absolute before the war
began, interest should include the time covered by the war.  P. 81.
299. Fed. 538, affirmed in part; reversed in part.

CERTIORARI, allowed on cross petitions, to review a
judgment of the Circuit Court of Appeals, which affirmed
a decree of the District Court (291 Fed. 768, 769) allow-
ing a recovery, without interest during the war, in a suit
under the Trading with the Enemy Act.

*Mr. Alexander B. Siegel,* for petitioners, Benjamin Guin-
ness et al.

*Mr. Dean Hill Stanley,* Special Assistant to the Attor-
ney General, with whom *Mr. Solicitor General Mitchell*
and *Mr. Assistant Attorney General Letts* were on the
brief, for respondents, Hicks, Alien Property Custodian,
and White, Treasurer of the United States.

The district court in calculating the amount of the
German firm's indebtedness in United States money
should have adopted the rate of exchange existing at the
date of the entry of the final decree.  This question arises
principally because a court in the United States can not

enter a decree or judgment in foreign money. *The Edith* (1871), Fed. Cas. No. 4281; *Erlanger* v. *Avengno,* 24 La. Ann. 77; *Bronson* v. *Rodes* (1868), 7 Wall. 229; *Butler* v. *Horwitz,* 7 Wall. 258.

The following cases either directly or inferentially hold that the proper rate of exchange to be adopted is the rate existing at the date of judgment. They seem to represent the weight of authority in the American courts upon the subject prior to the Great War. *Taan* v. *LeGaux* (1793), 1 Yeates (Pa.), 204; *Smith* v. *Shaw* (1808), 2 Wash. C. C. 167; *Lee* v. *Wilcocks,* 5 Serg. & Rawle (Pa.), 48; *Grant* v. *Healey* (1839), Fed. Cas. No. 5696; *Cropper* v. *Nelson,* Fed. Cas. No. 3417; *Smith* v. *Shaw,* Fed. Cas. No. 13170; *Hawes* v. *Woolcock,* 26 Wis. 629; *Robinson* v. *Hall,* 28 How. Prac. 342; *Scott* v. *Hornsby,* 1 Call. (Va.) 35; *Comstock* v. *Smith,* 20 Mich. 338; *Murphy* v. *Camac,* Fed. Cas. No. 9948; *The Blohm* (1867) Fed. Cas. No. 1556; *Marbury* v. *Marbury* (1866), 26 Md. 8; *Hargrave* v. *Creighton* (1873), 1 Woods. 489; *Capron* v. *Adams* (1868), 28 Md. 529; *Benners* v. *Clemens* (1868), 58 Pa. 24. And see Story, Confl. Lws., (7th ed.), § 308.

There were American cases, however, decided prior to the war which seem to take a contrary view. Amongst these are: *Spreckles* v. *The Weatherly* (1891), 48 Fed. 734; *Forbes* v. *Murray* (1869), 3 Ben. 497, Fed. Cas. 4928; *Grunwald* v. *Freese* (1893), 34 Pac. (Calif.) 73; *McKiel* v. *Porter* (1842), 4 Ark. 534; *Hussey* v. *Farlow* (1864), 91 Mass. 263; *Stringer* v. *Coombs* (1873), 62 Me. 160; *Jelison* v. *Lee,* 3 Woodb. & M. 368.

The text writers, in so far as they adopt any rule, adopt the rule that the proper rate of exchange is the rate existing at the date of the trial or at the date of the actual payment of the money. Sutherland on Damages, (4th ed.) § 213; Sedgwick on Damages, (9th ed.) § 274.

The earlier English decisions seem to be as much confused as the American. *Elkins* v. *East India Co.* (1717),

1 P. Williams, 395; *Scott* v. *Bevan* (1831), 2 Barn. & Adol., 78; *Delegal* v. *Naylor* (1831), 7 Bing. 460; *Cash* v. *Kennion* (1805), 11 Vesey 314. Coming down to more recent decisions, the last English case upon the subject prior to the very recent cases, was *Manners* v. *Pearson* (1898), 1 Ch. Div. 581, which in its proper interpretation, clearly lays down the rule that the rate of exchange prevalent at the date of judgment is to be adopted under circumstances such as the present.

The recent American decisions are not in accord upon this question, some favoring the date of breach, others the date of judgment. In the latter cases, the decisions result mostly from following *S. S. Celia* v. *S. S. Volturno*, (1921), L. R. 2 App. Cas. 544, which was a case sounding in tort. See *The Hurona,* 268 Fed. 910; *The Verdi.* 268 Fed. 908, distinguished as a tort case; *Page* v. *Levenson,* 281 Fed. 555; *Liberty Nat. Bank* v. *Burr,* 270 Fed. 251; *Saigon Maru* (1920), 267 Fed. 881; *Hoppe* v. *The Russo-Asiatic Bank,* 200 App. Div. 460, aff. 235 N. Y. 37; *Gross* v. *Mendel,* 171 App. Div. 237; *Sirie* v. *Godfrey,* 196 App. Div. 529; *Revillon* v. *Demme,* 114 Misc. 1. .

The English courts, since the outbreak of the Great War, have finally adopted the rule that the rate of exchange existing at the date of the breach of the contract to pay or the commission of the tort, is the proper rate to be used in computing in the money of the forum the amount of a debt or tort in foreign currency. *Kirsch & Co.* v. *Allen,* (1919), 36 T. L. R. 59; *S. S. Celia* v. *S. S. Volturno* (1921), L. R. 2 App. Cas. 544. See also *Lebeaupin* v. *Crispin & Co.* (1920), 2 K. B. D. 714; *Di Ferdinando* v. *Simon Smits & Co.* (1920), 3 K. B. D. 409; *Société des Hotels* v. *Cummings* (1921), L. R. 3 K. B. D. 459; *in re British American Continental Bank Ltd.* (1922), 2 Ch. 575; *Uliendahl* v. *Pankhurst Wright & Co.* (1923), 39 T. L. R. 628; *Barry* v. *Van den Hurk* (1920), 36 T. L. R. 663.

The following American cases, besides the ones already cited, adopt the breach date rule: *Simonoff* v. *Bank* (1917), 279 Ill. 248; *Rasst* v. *Morris* (1919), 135 Md. 243; *Katcher* v. *American Express Co.* (1920), 94 N. J. Law 165; *Wormser* v. *Marroquin,* 249 Fed. 428; *Dante* v. *Miniggio* (1924), 298 Fed. 845; *Wichita Mill & Elevator Co.* v. *Naamlooze, etc.,* 3 Fed. (2d) 931. The nearest approach to a consideration of the question by this Court is found in *Birge-Forbes Co.* v. *Heye,* 251 U. S. 317.

It will, of course, be apparent from an examination of the cases cited above, which have been decided since the outbreak of the Great War, that the decided weight of authority is in favor of the rule that the rate of exchange existing at the date of the breach of the contract is the proper one. On the other hand, it would seem, in so far as the cases prior to the war are helpful, that the rule prior to that time was that the rate of exchange prevalent at the date of judgment is the correct one. And it is interesting to note that some of the old cases which adopt the latter rule gave the same reason for adopting it as do many of the modern cases for adopting the former, namely, that the plaintiff should not be penalized for the failure of the defendant to pay his obligation, the situation being in the older cases that it was more advantageous to the plaintiff to have the rate existing at the time of the breach of obligation used. There must be a correct rule based upon reasoning which will be applicable under all circumstances. In a suit to recover the amount of an obligation owing in marks or any other foreign currency, the plaintiff is not suing to recover loss he has incurred by reason of the failure of the defendant to deliver a commodity, and it is perfectly apparent that the general rule of damages will not apply, for the very reason that there is no contract price of the marks to be delivered. Hence, the difference between the contract price of the so-called commodity and the market price can not

be found. As a matter of fact the parties did not make their contract with a view to treating the currency dealt with in the contract as a commodity. The parties intended the foreign currency to be treated as money. Gluck, " The Rate of Exchange in the Law of Damages," 22 Columbia L. Rev., p. 217. There may be much reason in a suit to recover damages for tort injuries where the amount of the damages is expressed in foreign currency, to adopt the rate of exchange existing at the date of the commission of the tort, as the proper rate, since in such instances the court is endeavoring to secure the payment to the plaintiff of compensation for the injuries done. In the case of a breach of contract to pay money the situation is somewhat different. While it may be true that in the case of a breach of contract to pay money a new right, namely, the right of damages, is created by the breach, and it is not a question of enforcing the payment provided for in the contract, it is also quite true that, while there may be a right of action for damages under such circumstances, the damages to be recovered are merely nominal. I Chitty on Pleading, (16th ed.), p. 121.

The only recompense which the law recognizes for failure to pay the amount of a debt is the payment of interest. When the parties made their contract they contracted with respect to a specific currency. The mere fact that a court in the United States, for reasons of policy, can not give judgment in marks should not affect the fundamental nature of the obligation. The obligation of the defendant is to pay marks; and although he may have committed a breach of contract for failure to pay the marks on the date they were due, the right of action which accrued is in its nature a right of action to recover damages expressed in marks, and while there may be damages for failure to pay, these damages, as Chitty remarks, are merely nominal. The right of action to

recover marks continues on down to the very time that the judgment is to be entered. The court in the trial of the action must find first how many marks are due as a result of the breach. The court, in the very nature of things, must consider the action as an action to recover marks, and it is impossible to arrive at a result without taking into consideration the number of marks that are due. When the court proceeds to enter judgment it should then consider the subject as if the defendant were about to pay his obligation, which payment would be made in marks, and the value of those marks as of that moment in American money is the amount the plaintiffs should recover in American money.

For comments upon the subject see notes in the following publications: 29 Harv. L. Rev. 873; 34 *Id.* 422 and 435; 20 Columbia L. Rev. 914 and 922; 31 Yale L. Jour. 198; 19 Michigan L. Rev., 652; 68 Pennsylvania L. Rev. (59 American Law Register), 395; 37 Law Quarterly Rev. 38.

The plaintiffs are not entitled to recover interest upon their debt for the period between April 6, 1917, and July 14, 1919. The common law is that interest upon such obligations is suspended during the period of war, because it is then impossible for the debtor legally to discharge his obligation. *Brown* v. *Hiatts,* 15 Wall. 177; *Hoare* v. *Allen,* 2 Dallas, 102; *Jackson Ins. Co.* v. *Stewart,* 1 Hughes, 310; *Mayer* v. *Reed,* 37 Ga. 482; *Roberts, Adm.,* v. *Cocks,* 28 Gratt. 207; *Biglar* v. *Waller,* Chase, 316.

The only provision in the Trading with the Enemy Act which permits the discharge of a debt owing by an enemy to a citizen of the United States is the provision of § 9, permitting the filing of a claim by the creditor and the collection of the obligation out of property of the enemy seized by the Alien Property Custodian. Unless the common-law rule is adhered to in all cases, to permit interest

to run during the period of the war on debts which are collected pursuant to § 9 of the Trading with the Enemy Act would be to adopt one rule as to interest where a particular German debtor had property in the United States, which had been seized, and to adopt another rule in those cases where a German debtor had no property in the United States which was subject to seizure. *Miller* v. *Robertson,* 266 U. S. 243; *New York Life Ins. Co.* v. *Davis,* 95 U. S. 425, distinguished. In the present case there is no evidence, and it is apparently not a fact, that the enemy debtor had any agent in this country.

The treaty of peace between the United States and Germany, signed on August 25, 1921, has no application to the questions involved in this case.

*Mr. Thomas G. Haight,* with whom *Mr. Amos J. Peaslee* was on the brief, for respondents, Carl Joerger et al.

The rate of exchange prevailing when judgment is entered should be used in converting foreign currency indebtedness into currency of the country of the forum. In addition to authorities cited by the Government on this head, see *Metcalf* v. *Mayer,* App. Div. N. Y., October 2, 1925.

Interest should not be allowed for the period while this nation and Germany were at war. The provisions of the treaty of Versailles which were made a part of the treaty between the United States and Germany do not affect the rate of exchange to be used or interest to be allowed in suits under § 9 of the Trading with the Enemy Act.

There is nothing in the Trading with the Enemy Act itself which requires the universal application of any particular rate of exchange to all suits brought under it. If it is necessary to consider the provisions of the treaty of Versailles, then it is apparent from the history and language of the Trading with the Enemy Act and the treaties that creditors, in suits under § 9 of the Trading with the Enemy Act, are entitled to enforce only their

common law contractual rights, and that § 9 was never ·
intended to give to a few American creditors the right
to enforce an extra-contractual claim, which is in essence
a claim against the German Government, for losses re-
sulting from the unusual depreciation of the German
mark.

By the reservations in the Congressional resolution and
the treaty of Berlin which incorporated certain provisions
of the treaty of Versailles, American nationals were pro-
tected in their claims against the German government
for losses from depreciation of the German mark, and
they can enforce and collect them through the Mixed
Claims Commission under the general award which has
already been made by that Commission. The plaintiffs'
claim for exactly this same debt has been filed with the
Commission and no possible injustice can result from an
interpretation of the Trading with the Enemy Act in
the way in which it was obviously intended to operate.

 Congress may, if it so elects, utilize the sequestered
German property, after the contractual common law
claims of their creditors have been satisfied out of it, as
well as all other German sequestered property, for the
payment of all claims of all American creditors and all
other claimants; but up to the present time Congress has
not yet determined whether it will apply the sequestered
property for this purpose or whether it will arrange to
satisfy these claims by some other means. On the con-
trary, Congress has expressly declared that the seques-
tered property shall stand as security for all American
claimants. The claimants in the case at bar have no right
to preferential treatment respecting the portion of their
claim which is, in essence, a claim against the government
of Germany.

By special leave of Court, briefs of *amici curiae* were
filed as follows: (1) by *Messrs. Charles E. Hughes*
and *Joseph M. Hartfield;* (2) by *Messrs. John W. Davis*

and *William C. Cannon;* (3) by *Messrs. William D. Guthrie, Lewis R. Conklin, Isidor Kresel,* and *Bernard Hershkopf.*

MR. JUSTICE HOLMES delivered the opinion of the Court.

These are cross petitions based upon a suit brought against the Alien Property Custodian by Guinness and others, doing business under the firm name of Ladenburg, Thalmann & Co., in New York. The facts are not in dispute. A German firm, Joerger and others doing business under the name of Delbrück, Schickler & Co., was indebted to the American firm under an account stated on December 31, 1916, for 1079.35 marks, subject to a setoff of $35.35. The debt was not paid when the war between Germany and the United States began, April 6, 1917. The Alien Property Custodian had taken property of the German firm of a value greater than the debt and the American firm brought this suit in equity to recover what was due to it, as provided by the Trading with the Enemy Act of October 6, 1917, c. 106, § 9; 40 Stat. 411, 419, amended by the Act of June 5, 1920, c. 241; 41 Stat. 977. The only questions raised and argued here are whether interest is to be allowed for the time covered by the war, from April 6, 1917, to July 14, 1919, and at what date the value of the mark is to be estimated in dollars in order to fix the amount of the decree. The District Court held that interest was suspended during the war, 291 Fed. Rep. 768, and that the value of the mark at the time when the debt should have been paid was the proper measure. (This value is fixed as 17½ cents.) 291 Fed. Rep. 769. The decree was affirmed by the Circuit Court of Appeals. 299 Fed. Rep. 538. The Alien Property Custodian in the interest of the German debtors seeks to reverse the latter ruling, in No. 80, and the American firm seeks to reverse the former ruling, in No. 81.

We take up the second question first as the principles that govern it have some bearing upon the matter of interest also. We are of opinion that the Courts below were right in holding that the plaintiffs were entitled to recover the value in dollars that the mark had when the account was stated. The debt was due to an American creditor and was to be paid in the United States. When the contract was broken by a failure to pay, the American firm had a claim here, not for the debt, but, at its option, for damages in dollars. It no longer could be compelled to accept marks. It had a right to say to the debtors " You are too late to perform what you have promised, and we want the dollars to which we have a right by the law here. in force. *Gould* v. *Banks,* 8 Wend. 562, 567. The event has come to pass upon which your liability becomes absolute as fixed by law." *Globe Refining Co.* v. *Landa Cotton Oil Co.,* 190 U. S. 540, 543. There is no doubt that this rule prevails in actions for a tort, *Preston* v. *Prather,* 137 U. S. 604, and in actions for the failure to deliver merchandise. *Hopkins* v. *Lee,* 6 Wheat. 109. The principle is the same in a contract for the payment of marks. The loss for which the plaintiff is entitled to be indemnified is " the loss of what the contractor would have had if the contract had been performed," *Chicago, Milwaukee & St. Paul Ry. Co.* v. *McCaull-Dinsmore Co.,* 253 U. S. 97, 100; it happens at the moment when the contract is broken, just as it does when a tort is committed, and the plaintiff's claim is for the amount of that loss valued in money at that time. The inconveniences and speculations that would be the result of a different rule have been pointed out in arguments and decisions, and on the other hand the momentary interest of the country of the forum may be in favor of taking the date of the judgment, but the conclusion to which we come seems to us to flow from fundamental theory and not to need other support. It is in accord with the decisions of several State Courts

and Circuit Courts of Appeals as well as of the English House of Lords. *Hoppe* v. *Russo-Asiatic Bank,* 235 N. Y. 37. *Katcher* v. *American Express Co.,* 94 N. J. L. 165, 171. *Simonoff* v. *Granite City National Bank,* 279 Ill. 248, 255. *Wichita Mill & Electric Co.* v. *Naamlooze &c. Industrie,* 3 Fed. (2d) 931; *S. S. Celia* v. *S. S. Volturno* [1921] 2 A. C. 544.

The denial of interest for the time covered by the war seems to us wrong. The cause of action had accrued before the war began, *Young* v. *Godbe,* 15 Wall. 562, and after it had accrued the question was no longer one of excuse for not performing a contract, but of the continuance of a liability for damages that had become fixed. The obligation of a contract is subject to implied exceptions, but when a liability is incurred by wrong or default it is absolute. Interest is due as one of its incidentals, and inability to pay it no more excuses from that than it does from the principal amount. Of course while the damages remain unpaid, interest during one time is as necessary as interest during another to effect the indemnification to which the delinquent is held by the law. There are indications that local and momentary interests have led to a diversity of decisions, but here again what we regard as principle has prevailed in later days, *Miller* v. *Robertson,* 266 U. S. 243; *Hugh Stevenson & Sons, Ltd.* v. *Aktiengesellschaft für Cartonnagen-Industrie,* [1918] A. C. 239, 245; s. c. [1917] 1 K. B. 842, 850. The case of *Brown* v. *Hiatts,* 15 Wall. 177, although criticized in the last cited decision, is consistent on its facts with the principle adopted here, since war existed at the time when the cause of action otherwise would have accrued, and it very possibly might be held that war excuses the performance of a contract although it does not impair or diminish a liability already fixed by law. Our decision makes it unnecessary to consider arguments drawn from

the Treaty with Germany and the Trading with the Enemy Act.

No. *80, decree affirmed.*

No. *81, decree reversed as to interest.*

MR. JUSTICE STONE took no part in this case.