Comptoir Commercial D'Importation (a Corporation), Plaintiff, *v.* George A. Zabriskie and Another, Composing the Firm of George A. Zabriskie, Defendants.

Supreme Court, New York County, June 24, 1926.

Sales — action for breach — sale negotiated for plaintiff by broker who delivered to defendants note specifically calling for " Cuba fine granulated refined sugar 100% " and requiring certificate of origin showing sugar was not bounty-fed — delivery of consignment containing bounty-fed Costa Rican sugar constitutes breach of contract — evidence indicates obligation was placed on defendants to supply sugar that would not be subjected to imposition of duties contemplated by French laws and customs — damages — plaintiff entitled to recover extraordinary duty paid French customs and attorney's fees — " breach day " rule applied in determination of plaintiff's damages.

Defendants, with whom plaintiff, a French corporation, negotiated, through a French broker for the purchase of a consignment of sugar, are liable to plaintiff for breach of contract since, upon receipt from said broker of a note specifically calling for " Cuba fine granulated refined sugar 100% " as well as the delivery of certificates of origin issued by the American customs authorities from which it would appear that the sugar was the production of a refinery not working

bounty-fed sugar, the defendants delivered 500 tons of sugar which because approximately ninety-seven per cent thereof was Cuban and one and seventy-two one-thousandths per cent was Costa Rican, French custom authorities assessed against plaintiff a large special duty on the ground that the shipment included bounty-fed Costa Rican sugar, and since the evidence indicates that the note placed an obligation on defendants to supply sugar, with appropriate certificate, of a character that would not be subjected to the imposition of duties contemplated by the French law and French customs regulations.

The risk of including Costa Rican sugar in the shipment, therefore, was on the defendants and they are liable to plaintiff for the extraordinary duty which it was required to pay the French customs upon delivery of the sugar in France, and for the services of a French attorney who obtained a reduction of the fine.

Even if the cablegrams which were interchanged between the broker and the defendants be regarded as constituting the contract between the plaintiff and the defendants, the defendants none the less failed to carry out their agreement, since they were advised specifically that delivery must be accompanied by a certificate that the sugar was not bounty fed and of a character to satisfy the French customs authority.

Applying the so-called " breach day " rule, in order to determine the date as of which the damages suffered in France should be transmuted into dollars, the plaintiff's recovery should be predicated on the rate of exchange prevailing at the date of the breach of contract.

Action by buyer for breach of contract of sale.

*Crawford & Tuska* [*Carl S. Stern* and *Benjamin Tuska* of counsel], for the plaintiff.

*Dixon & Holmes* [*Jabish Holmes* and *Thomas M. Healy* of counsel], for the defendants.

Proskauer, J. Plaintiff, a French corporation, negotiated through Goldschmidt, a French broker, with defendants for the purchase of sugar. Prior to these specific negotiations Goldschmidt had notified the defendants: " Sellers must produce certificate of origin stipulating that the Production Refinery does not work bounty-fed sugars. This is demanded by the Customs here and if buyers failed to produce this certificate a heavy duty would be charged * * * For all the future business it will be understood." He further advised defendants that " Sellers must deliver certificates of origin stipulating that the Production Refinery is not working bounty-fed sugars; as already explained this certificate must be produced on all the sugars imported into France or a heavy duty would be charged so we want you to understand that all the sugar that we have bought from you so far or that we shall buy in the future will have to be accompanied by these certificates and we beg you to take note of this." In the transaction in suit a series of cablegrams interchanged between Goldschmidt and the defendants culminated in two cables, evidencing agreement. Defendants cabled: " Cannot accept Marseilles offer without Havre

and only five hundred tons each at price quoted   *   *   *   Answer quick," to which Goldschmidt replied on July first: " Your todays cable received.  Accept your offers five hundred tons 1/16 July eleven sixtytwo Havre and five hundred July eleven fifty Marseilles. Buyer Comptoir Commercial Importation Havre."  On the next day, July second, the broker executed bought and sold notes, delivered one to plaintiff and mailed the other to the defendants. They described the sugar as " Cuba fine granulated refined sugar 100% " and provided: " Sellers to deliver certificates of origin issued by the American Customs stipulating: Production Refinery not working bounty-fed sugars   *   *   *   Buyers The Comptoir Commercial d'Importation LeHavre.  Our commission 1%."  The cables did not specifically refer to the presentation of the certificates that the sugar was not bounty fed and did not describe the sugar as " Cuba fine granulated refined sugar 100%."  The defendants shipped 500 tons of sugar, of which about ninety-seven per cent was Cuban and one and seventy-two one-thousandths per cent was Costa Rican.  Costa Rican sugar was treated in America by the customs authorities and the trade as originating in a country giving no bounties and, therefore, not bounty fed.  By treaty among the European allied nations Costa Rican sugar was treated as bounty fed and it was so classified and treated by the French customs authorities.  When the sugar arrived it was subjected by the French customs authorities to a large special duty on the ground that it contained Costa Rican sugar.  Plaintiff through French counsel secured a reduction, but was still required to pay an extraordinary duty of over 75,000 francs.  It was not possible to re-export the sugar and the most economical handling of the situation was to pay the duty and land the sugar in France.  Plaintiff seeks as damages the extraordinary duty it was required to pay and the reasonable value of the services of the French attorney who secured the reduction of the fine.

If the broker's notes were the contract, the defendants clearly breached it.  They specifically called for " Cuba fine granulated refined sugar 100%," and if this had been delivered no penalty would have been imposed.  The date of the receipt of the broker's note in New York is not disclosed.  It was mailed on July second in Paris; the sugar was on July 8, 1915, placed on ship, the documents presented to the Guaranty Trust Company and payment received about July 12, 1915.

Generally where a bought and sold note is retained without objection and acted upon by a party, such retention is a recognition of the authority of the agent.  (*Childs* v. *Riley Co.,* 186 App. Div. 775.)  Here the defendants not only retained the note without

protest, but paid Goldschmidt the commission set forth in the note. They likewise admitted impliedly in the exchange of correspondence that their obligation was to deliver Cuban sugar. On September twenty-fifth Goldschmidt cabled defendants, " Comptoir claim your account as bought Cuba sugar." Defendants did not deny this in their reply, but cabled: " Remier shipment nearly ninetyeight per cent Cuban." By letter they reiterated " On receipt of your cablegram we immediately made an investigation and found that the actual origin was as follows: Cuban 97.932, Costa Rica 1.072, Guatemalan .996." They did not disclaim their obligation to deliver Cuban sugar. Later they cabled again that the sugar was ninety-seven per cent Cuban. On February 26, 1916, Goldschmidt wrote the defendants: "Although, according to the contract you must deliver Cuba Cane sugar." In subsequent correspondence the defendants restated their position, but never questioned their obligation to deliver *Cuban* sugar.

These extra-judicial admissions are made conclusive by the admissions in the pleadings. In paragraph 9 of the complaint it is alleged that Goldschmidt negotiated a contract for the sale of " 500 tons of Cuba fine-granulated refined sugar 100% * * * and also deliver certificates of origin of said 100% Cuba fine-granulated, refined sugar issued by the American customs authorities from which it would appear that said 100% Cuba sugar was the production of a refinery not working bounty-fed sugar." It is further alleged that " said brokers thereafter on the conclusion of this sale delivered to their principals, the plaintiff and the defendants, brokers' bought and sold notes." The answer admits that " Goldschmidt negotiated the contract stated in said paragraph of the amended complaint and delivered the bought and sold notes as mentioned therein." In paragraph 7 of the answer the defendants admit and allege " that the sugar so delivered was Cuba cane fine-granulated refined 100% sugar." In paragraph 8 they deny " that there was any substitution by them of sugar in place of Cuba fine-granulated refined 100% sugar *contracted for* " (italics mine), and in paragraph 9 they allege that the sugar delivered was the equivalent of " Cuba fine-granulated refined 100% sugar."

For these reasons the broker's note must be regarded as *the* contract.

Even if the cables be regarded as constituting the contract, however, the defendants none the less failed to carry out their agreement. They were specifically advised that their delivery must be accompanied by a certificate that the sugar was not bounty fed, of a character to satisfy the *French* customs authorities.

The parties argued at length whether the French or the American

law should govern the interpretation of this contract.    The crucial question, however, under either law is what the parties intended by importing into this agreement the instructions given by Gold-schmidt to the defendants prior to this particular exchange of cables.    His letter of April twenty-first, referring to the necessity of a certificate that the sugars were not bounty-fed, emphasizes that this is demanded by " the customs here," and in his letter of April twenty-ninth Goldschmidt emphasizes that this certificate must be produced " on all the sugars imported into France."    The obligation was thus specifically placed upon the defendants to supply sugars, with appropriate certificate, of a character that would not subject the importation to duties contemplated by the French law and French customs regulations.    The risk of including Costa Rican sugar in the shipment, therefore, lay on the defendants and they are liable for the damage resulting therefrom.

I am called on to determine also the date as of which the damages suffered in France should be transmuted into dollars.    The rule is thus stated in an article by Professor Drake in the May, 1925, Michigan Law Review (p. 714):

" (1) In suits to redress a wrong the sum given as damages in the domestic judgment should be transformed into the foreign currency at the date of the breach of contract or of the conversion.    *    *    *

" (2) In the late English case of *Peyrae* v. *Wilkinson* (L. R. [1924] 2 K. B. 166), although it was brought, not to redress a wrong, but to enforce a right, the Court of the King's Bench adopted the ' breach day ' rule    *    *    *.

" (3) In suits to enforce a right the subordinate Federal courts in New York and the subordinate courts of the State of New York have adopted the ' judgment day ' rule."

The 3d paragraph of this statement refers to the cases of *Sirie* v. *Godfrey* (196 App. Div. 529), *Metcalf Co.* v. *Mayer, No. 1,* (213 id. 607) and *Orlik* v. *Wiener Bank Verein* (204 id. 432).    The last case followed the " breach day " rule; the first followed the " judgment day " rule; neither of the first two was an action for breach of con-tract; both of them were in effect actions on the contract.    Whether this distinction be sound or not, there is no case in New York which holds that in an action to redress a wrong, such as breach of con-tract, the " judgment day " rule should be enforced.    The Court of Appeals said (*Per Curiam*) in *Hoppe* v. *Russo-Asiatic Bank* (235 N. Y. 37, 39): " In an action properly brought in the courts of this State by a citizen or an alien to recover damages, liquidated. or unliquidated, for. breach of contract or for a tort, where primarily

the plaintiff is entitled to recover a sum expressed in foreign money, in determining the amount of the judgment expressed in our currency the rate of exchange prevailing at the date of the breach of contract or at the date of the commission of the tort is under ordinary circumstances to be applied."

The latest decision upon this subject is *Hicks* v. *Guinness* (269 U. S. 71), where Mr. Justice HOLMES declares generally for the " breach day " rule even in a case on an account stated.

The plaintiff is, therefore, entitled to the following damages: 73,938 francs at 5.92, $12,430.67, with interest thereon from August 14, 1916; 2,114.42 francs at 5.84, $344.93, with interest thereon from October 9, 1916; and the reasonable value of the lawyer's services 4,750 francs at 6.075, $781.89, with interest thereon from April 13, 1917. Verdict is directed accordingly, with exception to defendants. Thirty days' stay; sixty days to make a case.