# DET FORENEDE DAMPSKIBS SELSKAB v. INSURANCE CO. OF NORTH AMERICA.

District Court, S. D. New York.   July 26, 1928.

450

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Ira A. Campbell and Roger B. Siddall, both of New York City, of counsel), for libelant.

Bigham, Englar & Jones, of New York City (D. Roger Englar and M. P. Detels, both of New York City, of counsel), for respondent.

THACHER, District Judge (after stating the facts as above). By express provision of the bill of lading general average is made payable according to York-Antwerp Rules of 1890 and 1903. Rule 17 of the Rules of 1890 provides that contribution to general average shall be made upon the actual value of the property at the termination of the adventure. It is admitted that the Danish owners expended Danish kroner to purchase in the open market drafts payable in Norwegian and English currency, solely for the purpose of making the general average payments, and that in converting these expenditures of Danish kroner into American dollars the adjusters allowed the rate of exchange prevailing in March, 1925, when the adjustment was completed, the voyage having terminated in February, 1924.

Contribution in general average is made upon the principle derived from the ancient law of Rhodes, that what is given for the general benefit of all should be made good by the contribution of all in proportion to their interests. McAndrews v. Thatcher, 3 Wall. 347, 18 L. Ed. 155; Star of Hope, 9 Wall. 203, 228, 19 L. Ed. 638; Ralli v. Troop, 157 U. S. 386, 15 S. Ct. 657, 39 L. Ed. 742. Applying this principle, it must be obvious that the problem of general average adjustment is always one of exact reimbursement and proportionately equal contribution as between vessel, cargo, and freight. Inasmuch as the owners' expenditures in Danish kroner were necessary in order to settle accounts in England and Norway incurred solely by reason of the peril which threatened all the interests involved in the ship and her cargo, they should be allowed as general average disbursements. The owners cannot be made whole unless in the general average adjustment they receive credit for the exact equivalent of the currency which they expended. If this is not the rule, then whenever it is necessary to purchase foreign exchange in order to relieve the ship from distress while in a foreign port, the risk of loss or gain resulting from fluctuations in exchange will be imposed upon a single interest, although incurred for the general benefit of all. So long as the adventure continues such risks should by borne by all concerned. Upon general principles of the law of general average the adjusters were correct in allowing expenditures in Danish kroner rather than in Norwegian and English currency.

They were, however, in error in converting Danish kroner into dollars at the rate of exchange prevailing at the time of adjustment rather than at the end of the voyage. Under rule 17 of the York-Antwerp Rules of 1903, incorporated in the bill of lading, it is provided that contribution to general average shall be made upon the actual value of the property at the termination of the adventure. This clause may well be construed to cover the value of foreign currency expended, inasmuch as adjustment is always made in the currency of the place where the voyage terminates, and one of the elements of value entering into the adjustment is the value of foreign currency disbursed for general average account. If there is a sacrifice of cargo by jettison, or of the ship, as in the case of a voluntary grounding, reimbursement is determined on the basis of value existing upon the termination of the voyage. Contribution of ship and cargo interests is also determined upon the basis of values existing at that time, and there is no reason suggested for taking the value of foreign currency as of any different date.

But in any event the termination of the voyage is clearly the date upon which the right to contribution becomes fixed under rule 17. If prior to that date the ship and her cargo are totally lost there can be no right of contribution. Chellow v. The Royal Commission on Sugar Supply, [1922] 1 K. B. 12. But upon the safe arrival of the vessel at the termination of her voyage nothing can defeat that right. For its enforcement a lien is given not only against the cargo but to the owners of cargo lawfully jettisoned as against the

vessel, her freights and the remainder of the cargo. Thomas v. Osborn, 19 How. 22, 15 L. Ed. 534. Such liens attach before the discharge of the vessel, and "it is the duty of the master, as the representative of the interests of all, upon the completion of the voyage, to cause an average adjustment to be made, and to hold the cargo until the amount payable by each contributor is paid, or secured by a proper average bond." For neglect of this duty an owner of cargo entitled to contribution may recover from the master, the ship and her owners, without pursuing the owners of the cargo wrongfully released. Heye v. North German Lloyd (D. C.) 33 F. 60, 70, 2 L. R. A. 287. Upon the termination of the voyage all that remains to be done is to adjust rights and obligations then existent. Such adjustment, whenever made, is merely a translation of these rights and obligations into terms of money. It is in effect an accounting as between the interests concerned in the ship and her cargo, by which their contributive shares are fixed as of the day upon which the voyage terminated. It is, of course, true that the proportionate contributions to be made by the various interests cannot be ascertained until apportionment and adjustment are made. (Frederick H. Leggett & Co. v. 500 Cases of Tomatoes (C. C. A.) 15 F.(2d) 270), and for this reason it has been said that the lien is inchoate until the adjustment is completed. The Allianca (D. C.) 64 F. 871, affirmed on opinion below (C. C. A.) 79 F. 989. There is, however, no suggestion in any of the authorities that the right to contribution, as distinguished from the computation and apportionment of the individual amounts to be contributed, is in any way conditioned upon the adjustment.

Thus it appears that the right to contribution was crystallized upon the termination of the voyage, and since the voyage ended in an American port the owner became then and there entitled to receive contribution in dollars. This indebtedness arose in the United States, was payable in its currency, and subject to its law. Decision is therefore controlled by Hicks v. Guinness, 269 U. S. 71, 46 S. Ct. 46, 70 L. Ed. 168, and Sutherland v. Mayer, 271 U. S. 272, 46 S. Ct. 538, 70 L. Ed. 943. See, also, S. S. Celia v. S. S. Volturno, [1921] 2 A. C. 544; Lebeaupin v. Crispin, [1920] 2 K. B. 714; In re British American Continental Bank [1922] 2 Ch. 589. And it is entirely clear that such decisions as Zimmerman v. Sutherland, 274 U. S. 253, 47 S. Ct. 625, 71 L. Ed. 1034, and Deutsche Bank v. Humphrey, 272 U. S. 517, 47 S. Ct. 166, 71 L. Ed. 383, can have no application, because in those cases the obligation was to pay in the currency of a foreign country, where the debt became due and was payable, and there was no breach here from which a present liability in dollars arose, as Holmes, J., points out in the Zimmerman Case. In the case at bar "a present liability in dollars" arose upon the termination of the voyage. Accordingly, that is the date which fixes the exchange value. The necessity of adjusting the accounts as between the interests involved is not material. Sutherland v. Mayer, and English cases cited, supra.

I am therefore constrained to conclude that the adjusters erred in fixing the exchange value of the Danish kroner as of March, 1925, instead of February, 1924, but that they were right in allowing the expenditure of Danish kroner, as distinguished from English pounds and Norwegian kroner, as general average expenditures. Accordingly this motion for final decree must be denied, unless the parties can agree upon the amount due in accordance with the foregoing opinion, and the libelant wishes to take a decree for that amount.