## THE INTEGRITAS.

District Court, D. Maryland.

June 19, 1933.

Wm. A. Grimes, of Janney, Ober & Williams, of Baltimore, Md., for libelant.

John T. Tucker, of Keech, Carman, Tucker & Anderson, of Baltimore, Md., for respondent.

CHESNUT, District Judge.

The only question for decision in this case involves the application of the rule for determination of the rate of international exchange for foreign money, in this case, between the American dollar and the British pound; and the particular point in issue is whether the exchange rate prevailing at the time of the accrual of the right of action or at the date of the decree is to govern.

The question is submitted on stipulation of counsel filed May 25, 1933, providing that the allegations of the libel are true "and the libelant shall be entitled to damages equivalent to 623.13.5 British pounds." The stipulation also provides "(a) that if the court shall find that the libelant is entitled to recover the agreed damage on the basis of the rate of exchange prevailing at the time of loss, that is, December 13, 1930, the libelant shall have a decree for $3027.90; (b) that if the court shall find the libelant is entitled only at the rate of exchange now prevailing, the libelant shall have a decree equivalent to 623.13.5 pounds at the rate of exchange on the date of said decree; (c) that the decree shall bear interest at 6% from the date thereof."

The facts disclosed by the libel and admitted by the stipulation to be taken as proved, are simple. The steamship "Integritas" is an Italian steamship, the owners of which, on or about September 5, 1930, chartered her to Lowry & Co., Agents, for the carriage of sugar from Cuba to Liverpool, England. On or about October 31, 1930, the steamer sailed from Cuba with a cargo of cane sugar and in due course arrived at Liverpool but with the sugar short and to some extent damaged. Tait & Lyle, Limited, became for value the owner of the cargo of sugar and entitled to the delivery thereof. They had insured the cargo with the Northern Assurance Company, Limited, a British corporation doing business, however, in the United States, and the particular policy having been issued in New York City. In its damaged condition. the cargo was discharged in Liverpool on December 13, 1930, at which time the rate of exchange for pounds sterling was $4.855 as stipulated. The rate now prevailing is approximately $4.05.

The charter party contained the following arbitration clause: "Any dispute that may arise under this charter to be settled by arbitration, each party appointing an arbitrator, and should they be unable to agree, the decision of an Umpire selected by them to be final. The Arbitrators and Umpire are all to be commercial men and resident in London and the arbitration to take place there. This submission may be made a rule of the High Court of Justice in England by either party."

No arbitration in fact was held but the insurer upon demand paid Tait & Lyle a loss in the amount of 1312.2.5 pounds and, of course, became subrogated to the rights of Tait & Lyle as owners of the cargo.

Presumably the steamship had sailed from Liverpool before any adverse proceedings were taken there, and probably the amount of the loss was not liquidated and determined until later. The libel in this case was filed March 22, 1932, when the ship was libeled in the port of Baltimore.

As the parties have now by stipulation agreed upon the amount of damages expressed in British pounds, only the narrow question is presented as to whether the decree which here must be given in dollars is to be the equivalent of the agreed value in pounds taken at the rate of exchange as of the time of the loss when the cause of action arose, or at the date of the decree. As said by Judge Rose in a case involving a similar problem, Page v. Levenson, 281 F. 555, 557 (D. C. Md.): "The point has been discussed for centuries, apparently without there ever having been a time when all the doctors of the law were of one mind as to it. Story's Conflict of Laws, § 308 et seq. The date of

the contract, of its breach, of the bringing of suit, and of the trial or judgment, have each been suggested as the time at which the conversion from one currency to another should be made."

In that case, Judge Rose, after an exceedingly interesting discussion of the relative advantages and disadvantages of the several dates suggested, reached the conclusion that the date of the breach of the contract should be adopted as the controlling time to determine the rate of exchange. He said: "To take any other date than that of the breach as that at which the conversion is to be made will lead to intentional obstruction of speedy trials or make the rights of the parties dependent upon all sorts of accidental occurrences."

The English decisions appear to be quite uniformly in support of this rule but the American authorities are very sharply divided upon the subject. See annotations in 11 A. L. R. 363; 43 A..L. R. 520; 50 A. L. R. 1273; 80 A. L. R. 1374.

However, subsequent to Judge Rose's decision in Page v. Levenson, a series of cases involving the particular problem have been decided by the Supreme Court. In Hicks v. Guinness, 269 U. S. 71, 46 S. Ct. 46, 70 L. Ed. 168, it was held that the debt of a German to an American citizen due and payable here in German marks before this country entered the late war, was to be measured by the value of the marks in dollars as of the time when the default occurred. It is to be noted that the obligation was payable in this country, and therefore subject to the law of this country. And in Sutherland v. Mayer, 271 U. S. 272, 46 S. Ct. 538, 70 L. Ed. 943, a similar rule was applied to an accounting after the war, between an American citizen resident in Boston, and German partners, in determining the American partner's share of the partnership property after the war. But in Deutsche Bank v. Humphrey, 272 U. S. 517, 47 S. Ct. 166, 71 L. Ed. 383, the majority opinion by Mr. Justice Holmes, (who had also written the opinion of the court in Hicks v. Guinness), adopted the date of the decree as the time for fixing the rate of exchange. In that case the situation was a suit in the federal courts by a citizen of this country against the Alien Property Custodian to affect the property of a German bank held by him. The basis of the obligation was the deposit by the American in a German bank prior to our participation in the war and a demand for the return thereof also prior to the war. The obligation was payable in German marks. In the majority opinion it was

said: "In this case, unlike Hicks v. Guinness, 269 U. S. 71, 46 S. Ct. 46, 70 L. Ed. 168, at the date of the demand the German Bank owed no duty to the plaintiff under our law. It was not subject to our jurisdiction and the only liability that it incurred by its failure to pay was that which the German law might impose. It has incurred no additional or other one since. A suit in this country is based upon an obligation existing under the foreign law at the time when the suit is brought, and the obligation is not enlarged by the fact that the creditor happens to be able to catch his debtor here. * * * An obligation in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it. Legal Tender Cases, 12 Wall. 457, 548, 549, 20 L. Ed. 287. Obviously, in fact a dollar or a mark may have different values at different times but to the law that establishes it it is always the same. If the debt had been due here and the value of dollars had dropped before suit was brought the plaintiff could recover no more dollars on that account. A foreign debtor should be no worse off."

The minority opinion, written by Mr. Justice Sutherland and concurred in by three other justices, strongly presents the opposing contention, saying: "The majority opinion rests upon the distinction that the debt upon which recovery here is sought was payable in Germany. The distinction, I think, is fallacious, and proceeds from a very narrow view of the principles applied in Hicks v. Guinness and Sutherland v. Mayer."

In a still later case, Zimmermann v. Sutherland, 274 U. S. 253, 47 S. Ct. 625, 71 L. Ed. 1034, Mr. Justice Holmes, in rendering the opinion for an undivided court, said: "The distinction between the Deutsche Bank Case and Hicks v. Guinness, 269 U. S. 71, 46 S. Ct. 46, 70 L. Ed. 168, is not, as argued, that the plaintiff in Hicks v. Guinness was in the United States, but that, as the court understood the facts, the debt was payable in New York and subject to American law, so that upon a breach of the contract there arose a present liability in dollars."

The problem for my determination is whether the principle applied by the court in Deutsche Bank Case is applicable here, and I have reached the conclusion that it is. In the case at bar the delivery under the contract for safe carriage was at Liverpool, England, and was there breached by the failure to safely deliver the whole cargo. The damages then and there became payable and indeed as above noted, the charter party stipulated

by the arbitration clause that the controversy should be there adjusted. Under the provision of the contract and the facts, the obligation of the party in default was thus payable in British money and governed by British law. So far the case at bar seems to be quite parallel to the Deutsche Bank Case. A possible distinction between the two cases may lie in the fact that in the Deutsche Bank Case what was being sued for was a debt payable in Germany in German marks; and there is a further possible distinction that the plaintiff's claim in the Deutsche Bank Case was for a definite amount of German marks which, of course, were the currency of Germany and not commodities, while in the case at bar the claim was not directly under the contract for an ascertained debt, but this proceeding is a libel in rem against the ship for damages for breach of contract. However, after a review of the authorities, I have reached the conclusion that these distinctions are not important or controlling, although the contrary has been suggested in some of the decisions. As I read the several cases in the Supreme Court, the controlling principle in the Deutsche Bank Case is that the American courts are simply enforcing here the foreign law as it existed at the time of the breach and also at the time of the institution of this suit. And in this connection it is to be noted not only that the stipulation of the parties states the amount of damages in terms of British pounds, but also provides and stipulates: "3. That if this libel had been brought in the Courts of England the decree would have been for pounds sterling at the time of the decree without any regard to depreciation in the value of sterling in the terms of dollars or other currency."

And the language of the majority opinion in the Deutsche Bank Case already quoted is particularly in point: "An obligation in terms of the currency of a country takes the risk of currency fluctuations and whether creditor or debtor profits by the change the law takes no account of it. * * * If the debt had been due here and the value of dollars had dropped before suit was brought the plaintiff could recover no more dollars on that account. A foreign debtor should be no worse off."

And I think the clearly expressed opinion of Mr. Justice Sutherland dissenting in the case makes it entirely plain that the distinctions above suggested are unimportant to the principle adopted and applied in the majority opinion.

In Royal Insurance Co., Ltd., v. Compania Transatlantica Espanola (D. C.) 57 F. (2d) 288, 291, 292, District Judge Byers in the Eastern District of New York applied the principle of the Deutsche Bank Case to a case involving a situation quite similar to that of the instant case. See also Tillman v. Russo Asiatic Bank (C. C. A. 2) 51 F.(2d) 1023, 80 A. L. R. 1368, certiorari denied 285 U. S. 539, 52 S. Ct. 312, 76 L. Ed. 932; Thornton v. National City Bank of New York, 45 F.(2d) 127 (C. C. A. 2); The Hurona, 268 F. 910 (D. C. S. D. N. Y.); Marburg v. Marburg, 26 Md. 8, 90 Am. Dec. 84.

█ The necessary conclusion is that the libelant is entitled to a decree for an amount in dollars equivalent to 623.13.5 pounds at the rate of exchange prevailing on the date of the decree, and that the decree shall bear interest at the rate of 6 per cent. from the date thereof as stipulated in this case. No objection to the jurisdiction has been made by counsel in this case on the ground that the parties are all foreigners and the cause of action did not arise within the United States. As the parties make no objection to the jurisdiction and as I understand it is discretionary with the court to exercise jurisdiction in such a case, I have decided to do so. See Canada Malting Co. v. Paterson Steamships, Ltd., 285 U. S. 413, 52 S. Ct. 413, 76 L. Ed. 837; The Eir, 60 F.(2d) 124 (C. C. A. 4).

Counsel may prepare and submit a decree in conformity therewith.