WILLIAM McCRINDLE & SON, LTD.,
Plaintiff-Appellee,

v.

Leslie B. DURANT and American Marine Towing Corporation,
Defendants-Appellants.

No. 77–3030.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1980.

**90**

Neal D. Hobson, John T. Nesser, III, New Orleans, La., for defendants-appellants.

Bernard Berins, Martin L. C. Feldman, Robert A. Kutcher, New Orleans, La., for plaintiff-appellee.

Before JONES, BROWN, and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this diversity case each of the corporate parties, one American, the other Scottish, contends the other violated the agreements made by them in three related contracts. We conclude that the trial judge correctly placed fault on the American corporation, but that he should have reckoned the damages in dollars, not pounds sterling, because the contract under which damages were due was to be performed in the United States and its obligations were stated in dollars, although they were also translated into the sterling equivalent at the time the agreement was made.

## I.

William McCrindle and Son, Ltd., a Scottish corporation, and American Marine, an American corporation, entered into three agreements. One provided for a joint venture to form and operate a shipbuilding company; the second for a joint venture to form and operate a drilling company; the third provided for American Marine to train McCrindle personnel who would eventually work in the joint venture shipbuilding company. They were to be sent to the American Marine shipyard in the United States where they would both work for American Marine and, at the same time, receive training. American Marine was to pay McCrindle for their services in the form of wages, costs of living allowances, medical insurance, travel expenses, accommodations, food allowances and transportation in the United States. McCrindle was in turn to pay its employees.

Under the terms of the shipbuilding agreement, McCrindle was to arrange a major part of the financing for the joint venture. McCrindle's bank requested information concerning American Marine and its president and controlling stockholder, Leslie Durant. Despite repeated requests, American Marine furnished no information. As a result, McCrindle orally cancelled the two joint venture agreements in February, and later confirmed its action by letter. Ameri-

can Marine contends that McCrindle breached the contracts by terminating them without proper cause.

Beginning in December, several of McCrindle's men worked and received training at American Marine's shipyard under the third of the agreements. American Marine subsequently paid some of the amounts due under this agreement, but did not complete payment. On May 10 McCrindle notified American Marine that it would consider the training agreement breached if the sums owed were not paid in 10 days. They were not, and McCrindle brought this action to recover sums owed under the training agreement. American Marine counterclaimed for damages caused by the breach of the joint venture agreements.

■ Louisiana Civil Code article 1903 provides, "The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect." *See also* La.Civil Code art. 1931. Though the joint venture agreements did not specifically require American Marine to supply the data requested, the trial judge correctly concluded that McCrindle's obligation to secure a loan created the correlative and implied obligation on American Marine to provide any data that the lender reasonably requested.

■ Joint venture agreements usually impose joint responsibility for the operation of a business on both parties. This is what was intended by both American Marine and McCrindle. There was an adequate basis in the circumstances of the formation of the contract and in the express requirement that McCrindle obtain financing to conclude that the parties intended that they cooperate in obtaining financing for the joint venture and that each supply whatever information necessary for the other to obtain that financing. *See Makofsky v. Cunningham*, 5 Cir. 1978, 576 F.2d 1223 (good faith in performance of obligations is an integral part of fabric of the Louisiana law of obligations); *Refinery Employees Union v. Continental Oil Co.*, W.D.La.1958, 160

F.Supp. 723, *aff'd* 5 Cir. 1959, 268 F.2d 447, *cert. denied*, 1959, 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (implied obligations exist where there is a satisfactory basis in the express provisions of the agreements that make it necessary to imply an obligation to effect the purposes of the parties.) *Compare* Restatement of Contracts, § 315. The trial judge simply did not credit American Marine's assertion that McCrindle already had the relevant data and this was within his province as fact-finder. He also concluded that the data was requested and not supplied, and there was sufficient evidence to support this.

■ There was therefore ample support in the record for the trial court's conclusions that McCrindle was justified in withdrawing from the agreements and that its withdrawal was no excuse for American Marine's failure to pay McCrindle the amounts due under the terms of the training agreement.

## II.

■ The parties assume that, if any money is due McCrindle under the training agreement, it is necessary to convert the judgment to pounds sterling (apparently because McCrindle submitted its bills in pounds sterling). They differ only on the date appropriate for computation of the rate of exchange and they have briefed this issue at length. Acting on the same assumption, the trial judge decided that, as McCrindle contended, dollars should be converted to pounds at the rate of exchange in effect on the date of breach rather than on the date of judgment, as counterclaimed by American Marine. Our examination of the contract and of the cases cited by counsel satisfies us that conversion is unnecessary; the agreement was to be performed in the United States, its obligations were stated in dollars, and damages should have been calculated in dollars, not pounds. The cases dealing with the proper conversion rate address a problem presented by contracts in which the obligation is stated in terms of foreign currency only. *See, e. g. Hicks v.*

*Guinness*, 1925, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168; *Die Deutsche Bank Filiale Nurnberg v. Humphrey*, 1926, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383. Since the contractual obligations here were stated in terms of dollars, as well as pounds, there is no necessity for the court to select a date for calculating a conversion rate. Rather, it should calculate the damages caused by American Marine's breach in terms of the dollar obligations set forth in the contract.[1]

For these reasons, the judgment on the merits is affirmed; the judgment is vacated insofar as it states the amount due by reference to conversion at the rate of exchange for pounds sterling on the date of breach, and the case is remanded for recomputation of the amount due.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

---

1. To the extent such a calculation is impossible, either because McCrindle's damages were incurred in pounds or because, as in one provision, the contract does not state the obligation in dollars, the proper conversion rate is determined by the contract itself. This rate can be calculated from those obligations stated in both pounds and dollars which indicate the parties' own decision regarding the number of dollars required to compensate for a debt incurred in pounds.