931 F.2d 886
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
J.M. VOITH, GMBH, Plaintiff-Appellee,
v.
CERES CORPORATION, Defendant-Appellant,
and
N/V NUERNBERG ATLANTIC, her engines, boilers, etc., in rem,
Hapag Lloyd, A.G., Defendants.
 No. 90-2389.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1991.
Decided April 30, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Edward S. Northrop, Senior District Judge. (CA-88-3392-N)
 Christopher F. Drummond, Blumenthal, Wayson, Downs & Offutt, P.A., Centreville, Md., for appellants.
 James Dygert Skeen, Wright, Constable & Skeen, Baltimore, Md., (Argued), for appellees; Caspar F. Ewig, Hill, Rivkins, Loesberg, O'Brien & Mulroy, New York City, on brief.
 D.Md.
 AFFIRMED.
 Before DONALD RUSSELL and NIEMEYER, Circuit Judges, and JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 I.
 
 1
 Prior to trial, the parties stipulated to the facts of the incident giving rise to this case. Plaintiff Voith, a German corporation, manufactured a papermaking machine, and was shipping it to Minnesota via the port of Baltimore. The machine had an invoice value of $526,000.
 
 
 2
 On July 27, 1987, when defendant Ceres was attempting to remove the machine from the ship in which it had been transported from Germany and transfer it to a truck for shipment to Minnesota, the machine was dropped and extensively damaged. The weight of the machine, as marked on the crate, exceeded the capacity of the crane used by Ceres by more than 10,000 pounds.
 
 
 3
 Based on these stipulated facts, the district court found that defendant was liable for the damage to the machine caused by defendant's negligence.
 
 
 4
 On the issue of damages, evidence was presented in the form of depositions (taken in Germany), documents, and testimony from Captain Heiner Popp, a marine surveyor who inspected the cargo soon after the accident and provided an initial damage estimate of $350,000, or 60% of invoice value.
 
 
 5
 The parties stipulated to transportation costs of DM (deutsche marks) 38,608.78. The court found from deposition testimony and documentary evidence that packaging charges of DM 20,838 and survey costs of DM 3,908.80 were fair and reasonable. Koesters, the German firm that had manufactured a part of the machine (the roller), made repairs to the roller costing DM 155,024.00. Those costs are not contested, and amount to DM 218,379.58.
 
 
 6
 In addition, Voith claimed it had incurred DM 153,710.80 in internal repair costs. Voith offered two sources of evidence in support of that claim: computerized records of estimated costs and an independent survey, based on a pre-repair examination of the machine and certain Voith documents, by an expert, Mr. Rebohle.
 
 
 7
 The court found inconsistencies in those figures; and ambiguities, caused in part by translation difficulties, made exact computation difficult. The court did find, however, that Voith had performed significant internal repairs on the machine--a finding appellant does not contest.
 
 
 8
 Because of the inconsistencies and ambiguities in the evidence, the court disallowed approximately one-third of the claimed damages as not sufficiently substantiated by the evidence.
 
 
 9
 To reach the precise amount of the judgment, the court reduced the claimed damages to an amount which, with the addition of prejudgment interest of 10%, came to DM 398,250.
 
 
 10
 To convert the judgment to dollars, the court applied a conversion rate of 1.77 deutsche marks per dollar. The conversion rate at the date of the accident was 1.855 DM per dollar. The conversion rate at the date of judgment was 1.693 deutsche marks per dollar.
 
 
 11
 The court's conversion rate of 1.77 represented the mean between the conversion rate at the date of the accident (sought by defendant) and the conversion rate at the date of judgment (sought by plaintiff).
 
 
 12
 The total damage award was $225,000.
 
 II.
 
 13
 Defendant, the appellant, challenges the portion of the district court's damage award that reflects the cost of internal repairs. The two grounds asserted are:
 
 
 14
 1) That trial exhibits 11 (computerized records of estimated repair costs) and 16-20 (computer card back-ups of those records) should not have been admitted, and that therefore no admissible evidence existed to support the damage award; and
 
 
 15
 2) That the district court erred in using a conversion rate representing the average conversion rate from accident to judgment rather than using the conversion rate at the date of the accident.
 
 III.
 A.
 
 16
 Appellant, in a pre-trial order (Joint Appendix ("JA") at 73, 88-89), stipulated to the admissibility of Exhibit 11, the computerized printout of estimated repair costs. Appellant asserts, however, that appellee waived this stipulation by appellee's conduct at trial.
 
 
 17
 This argument is without merit. Counsel for appellee did question one witness, Mr. Faustlen, at length regarding Exhibit 11, but did so in order to show the court how the document should be used, and not merely to establish admissibility. See JA at 163-82.
 
 
 18
 Even if we were to find the stipulation of admissibility to have been waived, Mr. Faustlen's testimony was sufficient to establish the document's admissibility under the business record exception to the hearsay rules. See JA 176-82; Fed.R.Civ.P. 803(6). As the district court stated:
 
 
 19
 Well, I shouldn't think it would be a surprise. I don't know why you put up with all this stuff all the time. I mean why did you object to it? Guy testifies it's the kind of thing they use in the ordinary course of business and he does that work. All right, go ahead.
 
 
 20
 JA 182.
 
 
 21
 Exhibits 16-20, the computer card back-ups to Exhibit 11, are not necessary to sustain the damage award. Therefore, their admission, if error, was harmless.
 
 
 22
 The district court's assessment of damages based on the estimated cost of internal repairs is supported by the evidence in the record, and is not clearly erroneous.
 
 B.
 
 23
 Appellant asserts that where the cause of action arises in the United States, the conversion rate at the date of the accident applies in all cases. We do not believe that any such immutable rule applies. As the court stated in Page v. Levenson, 281 F. 555, 559 (D.Md.1922), one of the cases relied upon by appellant in urging the application of a blanket rule, "It must be borne in mind that no one rule will in this matter in all cases work well."
 
 
 24
 Once liability on the part of the defendant has been established, the paramount obligation of the trial court is to make the plaintiff whole. Like the Fifth Circuit in Jamaica Nutrition Holdings, Ltd. v. United Shipping Co., 643 F.2d 376, 381 (5th Cir.1981), "We see no reason to place the risk of devaluation on (or to grant the possibility of profit by appreciation to) the injured party." (Footnote omitted.)
 
 
 25
 The district court apparently determined that, in the circumstances of this particular case, the "mean conversion rate during the time of repairs and litigation" represented the most accurate means of compensating appellee for its losses caused by appellant's negligence. See JA at 302. We do not believe the district court committed reversible error in its application of such a conversion rate.
 
 The decision of the district court is
 
 26
 AFFIRMED.
 
 
 27
 NIEMEYER, Circuit Judge, concurring in part and dissenting in part:
 
 
 28
 I concur in all parts of the court's opinion, except Part III.B.
 
 
 29
 Plaintiff's injury in this case was measured by expenses for repairs made in German marks. The question is whether plaintiffs must compute the conversion from German currency to American dollars as of the time of the breach, or as of the time of judgment. Without resolving the issue, the district court, in a Solomonic judgment, computed the conversion as at each date and then split the difference. While that decision in this case did not amount to a significant difference, the principle, if accepted, could become problematic when the relative values of the currencies fluctuate significantly.
 
 
 30
 Because the plaintiff would conceptually be entitled to payment at the time it sustained injury, the conversion should be computed as of the date of breach. Any delay in collection would be accommodated by an award of prejudgment interest, computed on the damage stated in dollars. This is the rule announced in Hicks v. Guinness, 269 U.S. 71 (1925) ("[t]he loss for which the plaintiff is entitled to be indemnified is 'the loss of what the contractor would have had if the contract had been performed'; it happens at the moment when the contract is broken, just as it does when a tort is committed, and the plaintiff's claim is for the amount of that loss valued in money at that time." Id. at 80, citation omitted).
 
 
 31
 For these reasons, I respectfully dissent on that one point, and I would require a recomputation of damages in accordance with the principles set forth.