[Nos. 23805–1–I; 23902–3–I.   Division One.   April 29, 1991.]

WILLIAM R. STYRK, ET AL, *Appellants*, v. CORNERSTONE
INVESTMENTS, INC., *Defendant*, DAVID L.
MICHIE, ET AL, *Respondents*.

*Roger M. Leed,* for appellants.

*Arthur R. Hart,* for respondents.

SCHOLFIELD, J.—Appellants/cross respondents William Styrk and Ellen Styrk appeal the trial court's order denying prejudgment interest on the jury verdicts entered in their favor against respondents/cross appellants David Michie and Nancy Stroman. They also appeal the amount of the trial court's award of attorney's fees.

Michie and Stroman have cross–appealed, contending that the trial court erred in directing a verdict against them on the issue of negligence and also in failing to instruct the jury on the contributory negligence of the Styrks. They contend further that the trial court erred in failing to dismiss the Styrks' Consumer Protection Act claims. Stroman assigns error to the court's instruction to the jury that she was to be held to the standard of an attorney at law, and to the court's failure to dismiss the Styrks' claims of negligence, breach of fiduciary relationship, and breach of escrow duties against her. Finally, Michie assigns error to the award of attorney's fees in favor of the Styrks.

## FACTS

Ellen Styrk was the owner of a home located at 2501 S.W. Dakota Street in Seattle (hereinafter 2501). Her son, William Styrk, owned three homes nearby (hereinafter 4109, 4110, and 4111). In April 1983, a decision was made to sell Ellen's property at 2501. She had no experience in real estate matters and relied on her son to assist her.

The Styrks were contacted by Kris Sellers, a real estate agent with Ron Turner Realty, about an offer on the 2501 property. Ellen Styrk eventually agreed to sell 2501 to Cornerstone Investments, Inc., for a price of $39,950 with a down payment of $6,000 and monthly payments of $350 on the balance. The unpaid balance was represented by a promissory note in the amount of $33,950, signed by Cornerstone Investments. The terms of the agreement with Cornerstone required Styrk to take as her security a second deed of trust on the property. She was told by agent Kris Sellers that the first deed of trust was needed to secure a loan to the buyers in order to "update" the 2501 property.

Because Ellen Styrk was reluctant to subordinate her security to a first deed of trust, Kris Sellers arranged an addendum to the purchase and sale agreement providing that the total of the first and second deeds of trust would not exceed 90 percent of the appraised value of the property. Sellers told Styrk that she had worked with Cornerstone Investments for 2 years, that they were reliable, and that the principals in the company were millionaires. There was evidence that the Styrks relied on these statements and the 90 percent loan/appraisal cap in agreeing to the transaction.

At the time of the sale of 2501, Ellen Styrk signed a form presented by Ron Turner Realty which advised her to seek an attorney. The form was also shown to William Styrk, who testified that he did not see any need to consult with an attorney regarding the transactions.

In May 1983, William Styrk decided to list his homes at 4109 and 4110 for sale. Agent Kris Sellers once again

brought offers on the properties from Cornerstone Investments. The parties agreed to a price of $65,000 for both properties, with Styrk taking a second deed of trust as security. Styrk received the down payment and two promissory notes from Cornerstone Investments. The notes were in the amount of $25,000 each, representing the balance of the purchase price on the homes sold. The agreement with William Styrk also provided that the amount of the first and second deeds of trust was not to exceed 90 percent of the appraised value of the properties. William Styrk was not advised to seek the help of an attorney regarding these transactions. The Styrks were never shown an appraisal of any of the properties sold.

Attorney David Michie and his assistant, Nancy Stroman, handled the escrow closings for the sale of the Styrk properties. Stroman, who had considerable experience in the escrow business, was hired by Michie in March 1983 to handle escrows. Her responsibility was to carry out the escrow instructions, subject to Michie's approval.

A large portion of Michie's escrow business came from mortgage broker Pacific Home Equity (hereinafter PHE). PHE was in the business of making private loans to real estate investors, and Michie closed many of their escrows. PHE loaned the money to Cornerstone Investments to enable it to purchase the Styrk properties. The loans were arranged so that Cornerstone got cash out of the closing, which means that it put up no money for the purchases and kept any loan proceeds which were not needed to purchase the properties. To secure the loans, individual investors in PHE held the first deeds of trust to the properties. PHE obtained appraisals of all three of the Styrk properties: 2501 was appraised at $65,000; 4110 was appraised at $45,000, and 4109 was appraised at $52,000.

In carrying out the escrow instructions, Stroman did not examine the appraisals of the Styrk properties to determine compliance with the 90 percent loan/appraisal limit. The sales of 4109 and 2501 were completed in violation of the 90 percent restriction. The closing statements sent to the

Styrks did not include the amount of the first deed of trust on any of the properties. However, Ellen Styrk did sign a second deed of trust on 2501 acknowledging that her interest was subordinate to a first deed of trust in the amount of $25,000. There was testimony that copies of the first deeds of trust were given to the real estate agents.

Neither Michie nor Stroman ever advised the Styrks to get independent legal counsel regarding the transactions. Michie acknowledged that if he or Stroman became aware that a transaction was not in compliance with the 90 percent limitation, their normal procedure would be to let the parties or their agents know of that fact. He testified that he saw no records indicating that the Styrks had been so notified.

Cornerstone Investments defaulted on all amounts owing to the Styrks. Cornerstone also defaulted on its obligations to the holders of the first deeds of trust, who subsequently foreclosed on the properties in 1984. Styrk was unsuccessful in trying to sell the second deeds of trust and did not have the money to pay off the first deed holders. No one bid at the foreclosure sale, and the homes went to the holders of the first deeds of trust.

The Styrks brought suit against Cornerstone Investments, the real estate agents involved, and Michie and Stroman. The real estate agents settled prior to trial.

The Styrks asserted three theories of recovery at trial: professional negligence and breach of fiduciary duty, violation of the Consumer Protection Act (RCW 19.86), and violation of The Securities Act of Washington (RCW 21.20). At the close of the evidence, the court dismissed claims based on The Securities Act of Washington and directed a verdict against Michie and Stroman on the issue of negligence, leaving the jury to consider only proximate cause and damages. The court refused a request by Michie and Stroman to instruct on contributory negligence. The jury returned a verdict in favor of Ellen Styrk in the amount of $33,000 and in favor of William Styrk in the

amount of $50,000. These verdicts were based on the theories of negligence and/or breach of fiduciary duty. Michie alone was found liable on the Styrks' Consumer Protection Act claim. The court denied claims for prejudgment interest on the ground that the Styrks' claims were not liquidated.

The Styrks also sought attorney's fees under the Consumer Protection Act, RCW 19.86.090, employing a lodestar theory which requested a 75 percent enhancement of the basic fee, increasing the attorney's fee claim to a total of $66,808.50. The court denied any enhancement, deducted $6,900 from the lodestar figure, and then awarded 40 percent of this reduced amount for a total attorney's fee award of $12,695.

## Prejudgment Interest

Ellen and William Styrk assert entitlement to prejudgment interest. They claim their judgments were for liquidated sums, relying upon the fact that the amount of the verdict was exactly equal to the principal balance on the three promissory notes signed by Cornerstone. They rely upon the rule that damages are liquidated when the amount thereof is determinable by a fixed standard, without reliance on opinion or discretion. *Prier v. Refrigeration Eng'g Co.,* 74 Wn.2d 25, 32, 442 P.2d 621 (1968); *Hansen v. Rothaus,* 107 Wn.2d 468, 472, 730 P.2d 662 (1986).

There are two reasons the verdicts here do not qualify as liquidated sums. The first is that the Styrks did not sue for the principal balance due on the three notes, but instead, sued for their "loss of property or interest in property". Instruction 21. The same or very similar language was used in instruction 2 and instruction 10. This language permitted the jury to place a value on the lost property interest of each plaintiff. That value could vary from the principal balances on the notes. The trial court instructed the jury in instruction 17 that the defendants were negligent as a matter of law in failing to advise the Styrks of the "advisability of their respectively obtaining legal advice."

The Styrks also pressed the theory that defendants breached a fiduciary duty in failing to fully inform them in respect to whether the first and second trust deeds totaled more than 90 percent of the appraised value of the property. Defendants also failed to advise the Styrks of the appraised values and the amounts secured by the first deeds of trust.

A recovery under either theory would not necessarily be limited to the principal balances remaining on the three notes. The jury, in arriving at a figure representing the loss of property interest in respect to each property, could be influenced by the loss of past and future interest, the costs of the sale, and the values of the properties.

In verdict form A, the jury found defendants negligent for failing to advise the Styrks to seek independent legal advice. The jury also found the defendants breached a fiduciary duty to both plaintiffs. The jury found both the negligence and the breach of fiduciary duty were proximate causes of plaintiffs' damages. The jury could have found that but for the negligence and/or the breach, the Styrks would not have completed the sales at all. If the jury found one or more of the properties had a higher value than the sale price, the verdict could have been influenced by that higher value.

A second reason militating against the Styrks' claim that the verdicts were for a liquidated sum is that the Styrks' counsel argued to the jury for recoveries in amounts arrived at by taking the cash each plaintiff received out of the down payment after deducting closing costs, and crediting that amount against the sale price. Based on that calculation, counsel asked the jury to award $37,700 to Ellen Styrk and $56,200 to William Styrk. The verdicts were $33,000 to Ellen and $50,000 to William.

It is thus inescapable that on the theories of recovery pursued by plaintiffs, the jury was free to award verdicts in amounts substantially different from the principal balances on the three notes. Thus, the jury's use of the principal balances as the amount to be awarded involved the exercise

of discretion. The recoveries here were not for liquidated sums, and prejudgment interest properly was denied.

The defendants contended that another reason the verdicts were not for liquidated sums is that the Styrks sought recovery of substantial damages for severe mental suffering. In his argument to the jury, plaintiffs' counsel sought an award of $50,000 for William and $15,000 for Ellen on this theory. Verdict form A involved only the loss of property interest. Verdict form B involved only the theory of mental suffering. No damages were awarded for mental suffering. Plaintiffs contend that the use of separate verdict forms separated the property damage claim from the mental suffering claim sufficiently that the exercise of jury discretion in deciding the mental suffering claim should not impact the liquidated nature of the property damage claim.

Our disposition of the claims for prejudgment interest on the grounds stated make it unnecessary for us to address this particular issue, and we decline to do so.

## AWARD OF ATTORNEY'S FEES

In answering the interrogatories making up verdict form A, the jury found defendant Michie violated the Consumer Protection Act. The Styrks were awarded substantial attorney's fees based upon the provisions of that act. RCW 19.86.090. In the same verdict form A, the jury found the failure to inform the Styrks of the advisability of obtaining independent legal advice was negligence and a proximate cause of plaintiffs' damages. The jury also found both defendants violated a fiduciary duty, which was also a proximate cause of damage to plaintiffs.

Pursuant to these findings, the trial court awarded the Styrks an attorney's fee of $12,695.20 against appellant Michie only. The Styrks appeal the amount of attorney's fee awarded, and Michie cross–appeals, contending the trial court erred in awarding any attorney's fees.

Michie argues that he was found liable on a theory of negligently failing to advise the Styrks they should seek independent legal advice. He contends that in *Short v.*

*Demopolis,* 103 Wn.2d 52, 691 P.2d 163 (1984), the Supreme Court held that the Consumer Protection Act applies only to the entrepreneurial aspects of the law practice, which the court described generally as "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients." *Short,* at 61. The court held that these aspects of law practice are trade and commercial activities, as those terms are used in RCW 19.86.020 and, therefore, are covered by the Consumer Protection Act. Michie argues that the failure to advise a person to seek independent legal advice involves the substantive practice of law, rather than the entrepreneurial aspects described in *Short,* and would, therefore, be immune from application of the Consumer Protection Act.

While we recognize the logic of Michie's argument, we find it unnecessary to answer the argument directly because we conclude that upon the evidence in this case, the instructions to the jury, and the findings of the jury in verdict form A, the jury was permitted to base its judgment against him upon his activities as an escrow agent and closer of real estate transactions. Closing real estate transactions and acting as an escrow agent for a fee are clearly commercial services which would not be immune from the application of the Consumer Protection Act, even if performed by a lawyer. The fact that Michie is a lawyer does not give him an exemption from the Consumer Protection Act when he goes outside the practice of law and engages in a commercial enterprise.

Neither Michie nor Stroman told the Styrks that in two of the transactions the combined amounts of the first and second trust deeds exceeded 90 percent of the appraised value of the property. Nor did they tell the Styrks the amounts secured by the first mortgages, nor the amounts of the appraisals on the respective properties. Under the instructions and the evidence, the jury was permitted to conclude that if that information had been disclosed, some kind of corrective action would probably have been taken

which would have prevented the losses sustained by the Styrks.

An escrow agent owes a fiduciary duty to the parties to the escrow to conduct the transaction with scrupulous honesty, skill and diligence, and must comply strictly with the provisions of the escrow agreement. *National Bank of Wash. v. Equity Investors,* 81 Wn.2d 886, 910, 506 P.2d 20 (1973). An escrow agent can be held liable to his principals for damage proximately caused from his breach of the escrow instructions. *Equity Investors,* at 910.

When the required debt/appraisal ratio was not met in two of the transactions, the escrow agent could not close the transaction in full compliance with his instructions. Furthermore, the fiduciary duty owed by Michie to the Styrks under the circumstances of this case is broad enough to require disclosure to the Styrks of all information they might need for a determination as to whether or not the transactions were being closed in full compliance with the escrow instructions.

Accordingly, we affirm the application of the Consumer Protection Act to this case and reject Michie's contention that attorney's fees could not be awarded under RCW 19.86.090.

## AMOUNT OF ATTORNEY'S FEES

The Styrks also appeal the amount awarded as attorney's fees, contending that the award is too low. Employing the so–called "lodestar theory", they requested a 75 percent enhancement of the basic fee of $38,638, based on hourly rates. Thus enhanced, the fee requested was $66,808.50. The trial court denied enhancement, deducted $6,900 from the basic fee because the services involved legal work done prior to Michie and Stroman being involved in the case and also involved postjudgment matters relating to Stroman only and the issue of prejudgment interest. The court then awarded 40 percent of the reduced basic fee, for an award of $12,695. The reduction of 60 percent from the adjusted basic fee was justified in the view of the trial court by the

fact that much litigation time was spent unnecessarily pursuing a theory of liability totally unrelated to anything other than The Securities Act of Washington. The trial court expressed the view that the overall case was not particularly complex, but was made complex by the efforts of plaintiffs' counsel to establish liability under the act.

The standard of review is abuse of discretion, and an award of fees can be overturned only "for a manifest abuse of discretion." *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 595, 675 P.2d 193 (1983); *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 169, 795 P.2d 1143 (1990).

A review of the trial judge's comments relative to setting plaintiffs' attorney's fees makes clear the trial court's concern over extensively litigated issues not directly involved in proving a claim under the Consumer Protection Act. The jury finding of liability under the Consumer Protection Act involved Michie only. Much of the evidence involved Stroman and her duties and actions. All of the litigation involving The Securities Act of Washington, which was dismissed, and prejudgment interest, which was denied, were considered by the trial court as falling outside the sphere of the Consumer Protection Act.

*Travis v. Washington Horse Breeders Ass'n,* 111 Wn.2d 396, 410, 759 P.2d 418 (1988) addresses this issue as follows:

> In *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 744, 733 P.2d 208 (1987), we stated fees awarded under the statute at issue here, RCW 19.86.090, "should only represent the reasonable amount of time and effort expended which should have been expended for the *actions* of [the defendant] which constituted a Consumer Protection Act violation."

It is further evident that the trial court gave consideration to the factors for fixing attorney's fees outlined in *Bowers* at page 596. Those factors are listed in the court's order of March 15, 1989, as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee in the community for similar work; (6) the fixed

or contingent nature of the fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases, . . ..

The trial judge is in a peculiarly appropriate position to evaluate the various factors considered in setting an attorney's fee to be recovered in a particular case. The trial court did not abuse its discretion in setting the plaintiffs' attorney's fees.

### WAIVER OF CROSS APPEAL

We do not address the cross appeals of Michie and Stroman, asserting trial court error in directing a verdict for the Styrks on their negligence claims and failing to instruct the jury on the alleged contributory negligence of William and Ellen Styrk. Michie and Stroman have agreed to waive their cross appeals on those issues in the event the trial court is affirmed on the issue of prejudgment interest.

Judgment affirmed.

GROSSE, C.J., and WEBSTER, J., concur.