13-3357-cv
Yukos Capital S.A.R.L. v. Oao Samaraneftegaz

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand fourteen.

PRESENT:   ROSEMARY S. POOLER,
                     REENA RAGGI,
                     PETER W. HALL,
                              *Circuit Judges.*

------------------------------------------------------------------------
YUKOS CAPITAL S.A.R.L.,
                     *Petitioner-Appellee*,

     v.                                                              No. 13-3357-cv

OAO SAMARANEFTEGAZ,
                     *Respondent-Appellant*.[*]
------------------------------------------------------------------------
APPEARING FOR APPELLANT:        MATTHEW D. SLATER, Cleary Gottlieb Steen & Hamilton LLP, New York, New York.

APPEARING FOR APPELLEE:         ROBERT L. WEIGEL (Anne M. Coyle, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*).

------------------------------------------------------------------------

[*] The Clerk of Court is directed to amend the official caption as shown above.

1

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 3, 2013, is AFFIRMED.

Respondent Oao Samaraneftegaz ("Samaraneftegaz") appeals from a judgment enforcing an arbitration award in favor of Petitioner Yukos Capital S.A.R.L. ("Yukos Capital") and converting the award from Rubles to Dollars using the exchange rate as of the date of the arbitration award. Samaraneftegaz argues that the district court erred by (1) refusing to dismiss the case for forum non conveniens; (2) exercising personal jurisdiction over Samaraneftegaz; (3) failing to apply the exceptions to enforcement set forth in Articles V(1)(b) and V(2)(b) of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 2520; and (4) converting the award from Rubles to Dollars using the exchange rate as of the date of the arbitration award. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.      Forum Non Conveniens

Samaraneftegaz argues that the district court should have dismissed the case in favor of a Russian forum. Where a court has denied dismissal for forum non conveniens and the case has proceeded to judgment on the merits, a party challenging the forum non conveniens determination "must display substantial prejudice." Indasu Int'l, C.A. v. Citibank, N.A., 861 F.2d 375, 380 (2d Cir. 1988). The only prejudice Samaraneftegaz alleges was its inability to obtain the testimony of Victor Grekhov in the United States

2

forum.   Samaraneftegaz has not, however, proffered what testimony Grekhov might have given or how that testimony might have affected the case's outcome.   Thus, it has failed to demonstrate the prejudice necessary to challenge the <u>forum non conveniens</u> ruling.   <u>Cf.</u> <u>United States v. Bari</u>, 750 F.2d 1169, 1177–78 (2d Cir. 1984).

2.    Personal Jurisdiction

Samaraneftegaz's personal jurisdiction challenge rests on the purported invalidity of its agreement to arbitrate the dispute at issue in New York.   <u>See</u> <u>Doctor's Assocs., Inc.</u> <u>v. Stuart</u>, 85 F.3d 975, 979 (2d Cir. 1996).   According to Samaraneftegaz, the alleged agreement to arbitrate in New York was invalid under several Russian law doctrines.   We review questions of personal jurisdiction and contract validity <u>de novo</u> on issues of law and for clear error on issues of fact.   <u>See</u> <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 103 (2d Cir. 2006) (personal jurisdiction); <u>Shann v. Dunk</u>, 84 F.3d 73, 77 (2d Cir. 1996) (contract validity).   We treat a district court's determination of foreign law as an issue of law and review it <u>de novo</u>.   <u>See</u> <u>Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.</u>, 176 F.3d 601, 604 (2d Cir. 1999); <u>see also</u> Fed. R. Civ. P. 44.1 ("The court's determination [of foreign law] must be treated as a ruling on a question of law.").

First, Samaraneftegaz contends that the power of attorney used to authorize a representative to agree on Samaraneftegaz's behalf to arbitrate in New York was invalid because it was backdated.   Samaraneftegaz, however, has cited no Russian authority suggesting—much less holding—that a backdated power of attorney is invalid.   Article 186(1) of the Russian Civil Code provides that a "[p]ower of attorney <u>which does not</u>

3

indicate the date of its execution is void." J.A. 1087 (emphasis added). But that language does not, by itself, support Samaraneftegaz's contention that a power of attorney that does indicate a date is invalid because it was not signed until later. Second, Samaraneftegaz contends that the agreement to arbitrate in New York was invalid under both the Russian doctrine of "abuse of right" and Russian fiduciary law. The Russian cases interpreting the abuse-of-right doctrine that the parties have provided are inapplicable here because, in each case where the doctrine was applied, the court found some element of bad faith. Samaraneftegaz, however, has not established any bad-faith conduct by Yukos Capital. Although a Russian forum might have been more favorable to Samaraneftegaz, there is no evidence that a New York forum was unfair or that Yukos Capital had an improper motive in seeking a New York forum. We similarly identify no violation of Russian fiduciary law. Because each party to the agreement had its own separate representative, the Russian code provisions on which Samareneftgaz relies are inapplicable.

Third, Samaraneftegaz contends that the agreement to arbitrate in New York was invalid because it did not satisfy the modification requirements of the original contract between Samaraneftegaz and Yukos Capital. The original contract, however, was written in both English and Russian, and the two versions provided for different, somewhat contradictory modification requirements. Given those contradictions, we conclude—as the district court did—that the parties reasonably complied with the modification

4

requirements, notwithstanding that one party complied with the English-language version and the other complied with the Russian-language version.

We therefore conclude that the agreement to arbitrate in New York was valid and, therefore, that the district court properly exercised personal jurisdiction over Samaraneftegaz.

3.      New York Convention Exceptions to Enforcement

Samaraneftegaz submits that the district court should have refused to enforce the arbitration award under Articles V(1)(b) and V(2)(b) of the New York Convention. Samaraneftegaz further argues that the district court erred by not deferring to Russian court holdings that Articles V(1)(b) and V(2)(b) apply here. We review the district court's decision to confirm an arbitration award under the New York Convention de novo on legal questions and for clear error on factual questions. See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 89 (2d Cir. 2005). We review de novo its decision not to defer to a foreign court. See Diorinou v. Mezitis, 237 F.3d 133, 139 (2d Cir. 2001).

Article V(1)(b) of the New York Convention "essentially sanctions the application of the forum state's standards of due process." Iran Aircraft Indus. v. Avco Corp., 980 F.2d 141, 145–46 (2d Cir. 1992) (internal quotation marks omitted). Where, as here, the United States is the forum state, its standards of due process apply. Thus, the district court was not required to defer to the Russian court's legal conclusion that the New York arbitration proceedings violated Russian standards of due process. See Computer Assocs.

Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 371 (2d Cir. 1997). Moreover, even accepting the Russian court's factual findings, we determine that the arbitration did not violate American standards of due process. Under those standards, a party is entitled only to "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Jones v. Flowers, 547 U.S. 220, 226 (2006) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). The notice sent directly to Samaraneftegaz, in particular the October 24, 2006 letter, satisfied that requirement. The district court thus committed no Article V(1)(b) error.

Article V(2)(b) allows a court to refuse enforcement of an arbitration award where enforcement would violate the forum state's public policy. See Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009). Again, because that provision calls for application of United States public policy, the district court was not required to defer to the Russian court's determination that enforcement would violate Russian public policy. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d at 371. Applying United States law, this court has tightly restricted the public policy exception, emphasizing that the exception applies only where enforcement of the arbitration award, as opposed to enforcement of the underlying contract, would violate public policy. See Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 46 (2d Cir. 1997) ("[C]ourts may refuse to enforce arbitral awards only in those rare cases when enforcement of the award would be directly at odds with a well defined and dominant

6

public policy resting on clear law and legal precedent."). As a result, courts may not "revisit or question the fact-finding or the reasoning which produced the award." International Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 716 (2d Cir. 1998). To the extent a party claims that the underlying contract violates public policy, that claim is "to be determined exclusively by the arbitrators," and a party forfeits the claim if it fails to raise it during arbitration. Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 315 (2d Cir. 1998). Here, Samaraneftegaz never made any public policy arguments to the arbitrators. We therefore conclude that enforcing the arbitration award, "within the parameters of the arbitrator's interpretation of the facts," would not violate public policy. International Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d at 726.

Accordingly, Samaraneftegaz's challenges to the enforcement of the arbitration award fail on the merits.

4.      Conversion from Rubles to Dollars

Samaraneftegaz argues that the district court should not have converted the award from Rubles to Dollars and, if conversion was proper, that the district court erred by using the exchange rate as of the date of the award instead of the date of judgment.

American courts rarely enter judgments in a foreign currency. See Competex, S.A. v. Labow, 783 F.2d 333, 337 (2d Cir. 1986); see also Restatement (Third) of Foreign Relations Law § 823 (1987) ("The traditional United States rule has been that courts in the United States are required to render money judgments payable in United States dollars

7

only, regardless of the currency of obligation or loss."). Although there is no longer any reason courts cannot enter judgment in a foreign currency, see Competex, S.A. v. Labow, 783 F.2d at 337, we identify no error in the district court's choice to follow the prevalent practice.

As for the conversion date, under federal law, the pertinent date is determined by the law creating the relevant cause of action. If the cause of action arose under domestic law, the exchange rate from the date the cause of action accrued should be used. See Hicks v. Guinness, 269 U.S. 71, 80–81 (1925). If the cause of action arose under foreign law, the exchange rate from the date of domestic judgment should be used. See Die Deutsche Bank Filiale Nurnberg v. Humphrey, 272 U.S. 517, 519–20 (1926). Importantly, the Hicks-Deutsche Bank rule does not turn on the place of performance, the place where the obligation arose, or the currency used for the original debt. Those considerations are frequently relevant to determine under what law a cause of action arises, but it is the law creating the cause of action that is decisive with respect to conversion. See Zimmermann v. Sutherland, 274 U.S. 253, 255–56 (1927) ("The distinction between the Deutsche Bank Case and Hicks v. Guinness is not, as argued, that the plaintiff in Hicks v. Guinness was in the United States, but that, as the court understood the facts, the debt was payable in New York and subject to American law, so that upon a breach of the contract there arose a present liability in dollars." (citation omitted)). Here, the only cause of action before us is the domestic action to enforce an arbitration award provided by 9 U.S.C. § 207. Because the cause of action arose under domestic law, the district court correctly determined that

8

the proper date of conversion is the date that enforcement action arose, which is necessarily the date of the arbitration award.

We have considered Samaraneftegaz's remaining arguments and conclude that they are without merit.   We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court